IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OHIO NATIONAL LIFE :
ASSURANCE CORPORATION :
:
v. :
: Civil Action No. CCB-09-2044
SYLVIA STEVENS JONES, et al. :

...o0o...

## MEMORANDUM

Now pending before the court is defendant Sylvia Stevens Jones's motion to dismiss. Plaintiff Ohio National Life Assurance Corporation ("Ohio National") has sued Ms. Stevens Jones, Emma Jones, and the Estate of Nathaniel Jones (the "Estate") for a declaration of its rights and obligations under a Renewable Term Life Insurance Policy, Policy No. 6629572 (the "Policy"). The issues in this case have been fully briefed and the court heard oral argument on May 14, 2010. For the reasons stated below, Ms. Stevens Jones's motion will be denied.

## BACKGROUND

On or about June 12, 2002, a life insurance policy was procured for Nathaniel Jones with the assistance of Bobby Gross, an independent insurance producer with an office in Pikesville, Maryland. The Policy had a face value amount of $800,000. In its amended complaint, Ohio National alleges that Ms. Stevens Jones completed the application or otherwise "procured the Policy or caused it to be procured." (*See* Pl.'s Am. Compl. ¶¶ 11, 33.) Ohio National also stated, in its original complaint, that Mr. Jones was present when the Policy was procured. (*See* Pl.'s Notice of Withdrawal and Renewed Mot. for Leave to Amend, Ex. 7.) The Policy application contains Mr. Jones's signature and Ohio National has not challenged its authenticity. (Pl.'s Am. Compl., Ex. 1.)

On the Policy application, Ms. Stevens Jones[1] identified herself as Mr. Jones's niece and listed herself as the sole Primary Beneficiary, and her husband, Ricky M. Stevens, as the sole Contingent Beneficiary. The application described Mr. Stevens as Mr. Jones's nephew. Upon receiving the application, Ohio National contacted Mr. Gross to inquire about the insurable interest[2] of the beneficiaries. Ms. Stevens Jones allegedly instructed Mr. Gross to inform Ohio National that she had a business relationship with Mr. Jones and that the Policy was not sought for personal reasons. Mr. Jones and Mr. Gross signed an amendment to the insurance application on July 27, 2002, describing Ms. Stevens Jones and Mr. Stevens as "business partners" of Mr. Jones. (*See* Pl.'s Am. Compl., Ex. 1.) Ohio National subsequently issued the Policy on August 1, 2002.

Ohio National alleges that Ms. Stevens Jones and/or Mr. Stevens paid the premiums for the Policy from its inception. On February 20, 2004, ownership of the Policy was transferred from Mr. Jones to Ms. Stevens Jones. The transfer request described Ms. Stevens Jones as Mr. Jones's niece. On March 22, 2004, Ms. Stevens Jones completed a Designation of Beneficiary and Settlement Method Agreement form, changing the designation of beneficiaries such that she and Mr. Stevens were co-Primary Beneficiaries and Ricky Mario Stevens, Jr. was sole Contingent Beneficiary. Ms. Stevens Jones and Mr. Stevens were identified as Mr. Jones's niece and nephew respectively and Ricky Mario Stevens, Jr. was identified as Mr. Jones's great nephew. On November 22, 2005, Ms. Stevens Jones submitted another Designation of Beneficiary and Settlement Method Agreement form, eliminating Mr. Stevens as a policy beneficiary. This form identified both Ms. Stevens Jones

---

[1] Ms. Stevens Jones identified herself as "Sylvia Delmaro" on the application. In subsequent Policy documents and on her Death Claim Form she is listed as "Sylvia Stevens." She is identified as "Sylvia Stevens Jones" only in this lawsuit.
[2] The term "insurable interest" refers to the requirements of Md. Code Ann., Ins. § 12-201, which provides:
> a person may not procure or cause to be procured an insurance contract on the life or body of another individual unless the benefits under the insurance contract are payable to: (i) the individual insured; (ii) the individual insured's personal representative; or (iii) a person with an insurable interest in the individual insured at the time the insurance contract was made.

and Mr. Stevens, Jr. as relatives of Mr. Jones. None of these documents mentioned a business relationship between Ms. Stevens Jones and Mr. Jones.

Mr. Jones passed away on March 14, 2009 and Ms. Stevens Jones submitted a Death Claim Form to Ohio National on March 23, 2009. On April 13, 2009, Ohio National informed Ms. Stevens Jones that it would conduct an investigation into the Policy because Ms. Stevens Jones had provided Ohio National with inconsistent dates of birth and Social Security numbers. Pursuant to this investigation, Ohio National's Senior Field Representative, Ed C. Cordie, Jr., met with Ms. Stevens Jones to discuss the discrepancies on April 22, 2009. During the course of this meeting, Ms. Stevens Jones revealed to Mr. Cordie that the Policy had never been business-related and had always been a personal policy. She explained that although Mr. Jones was not her uncle, he had wanted to provide for her through the life insurance policy. Ms. Stevens Jones further claimed that Mr. Jones had adopted her in January 2006.

Ohio National filed its original complaint on August 3, 2009 against Ms. Stevens Jones. Upon learning that Emma Jones, Mr. Jones's sister, is the personal representative of Mr. Jones's Estate, however, Ohio National moved to withdraw its complaint and submit an amended complaint. The amended complaint now adds Emma Jones and the Estate as defendants. In addition, Ohio National's amended complaint now includes allegations by Emma Jones that Mr. Jones had a learning disability and could not read or write. Count I of the complaint is brought against Ms. Stevens Jones for rescission of the Policy under Md. Code Ann., Ins. § 12-201. Ohio National brings Count II against Emma Jones and the Estate for a declaration that they are not entitled to any proceeds under the Policy because it is void *ab initio*. Ms. Stevens Jones has filed a motion to dismiss arguing that the statute of limitations on Ohio National's claim has expired and, in the alternative, that the insurable interest doctrine is inapplicable in this case.

## ANALYSIS

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

As the court has diversity jurisdiction over this case, Maryland law applies. *See Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr.*, 594 F.3d 285, 290 (4th Cir. 2010). In

Maryland, civil actions must be filed within three years of the date when the cause of action accrues. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101. Maryland follows the discovery rule, whereby a cause of action accrues when the plaintiffs knew or should have known of the potential claim. *See Dual Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1104 (Md. 2004); *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981). "This standard, however, does not require actual knowledge on the part of the plaintiff, but may be satisfied if the plaintiff is on 'inquiry notice.'" *Dual*, 857 A.2d at 1104. A plaintiff is on "inquiry notice" when she has "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus, charging the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued." *Poffenberger*, 431 A.2d at 681. "In such a situation, should the plaintiff fail to seek out the facts supporting a cause of action, it can fairly be said that the plaintiff has inexcusably slept on his rights." *Pennwalt Corp. v. Nasios*, 550 A.2d 1155, 1163 (Md. 1988).

Although the question of when a cause of action accrues under § 5-101 typically is left to judicial determination, the question of "whether or not the plaintiff's failure to discover his cause of action was due to failure on his part to use due diligence, or to the fact that defendant so concealed the wrong that plaintiff was unable to discover it by exercise of due diligence, is ordinarily a question of fact for the jury." *See Frederick Road Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 973-74 (Md. 2000) (quoting *O'Hara v. Kovens*, 503 A.2d 1313, 1320 (1986)). The question of notice is left for the jury because it "generally requires the balancing of factual issues and the assessment of the credibility or believability of the evidence." *Id*. In addition, as Ms. Stevens Jones has raised the statute of limitations as a defense, she bears the burden of proof. *See Am. Gen. Assurance Co. v. Pappano*, 822 A.2d 1212, 1221 (Md. 2003).

5

Ohio National asserts that its claim did not accrue until April 2009, after it learned through its investigation that the Policy had not been procured for business purposes and that Ms. Stevens Jones was not actually Mr. Jones's niece. Therefore, Ohio National argues, it did not discover that Ms. Stevens Jones lacked an insurable interest until April 2009. Ms. Stevens Jones, however, asserts that Ohio National was on inquiry notice of the alleged lack of insurable interest in 2004, when Ms. Steven Jones filed change of beneficiary forms listing the beneficiaries as nieces, nephews, and great-nephews. Yet Ohio National counters that no suspicions were raised by the continued classification of the designated beneficiaries as family members because being a relative and a business partner are not mutually exclusive. For example, Mr. Jones and the beneficiaries could have worked together in a family business.

Based on the present record, it appears that whether the forms Ohio National received in 2004 and 2005 listing Ms. Stevens Jones as a relative should have raised red flags is disputed and partially fact-dependant. There is little information about the circumstances surrounding the decision to recharacterize the Policy beneficiaries as business partners, including the level of due diligence Ohio National exercised upon receiving the Policy application and its amendment and how that compares to due diligence norms within the life insurance industry. There is also little evidence about what specifics were communicated to Ohio National, whether the company reasonably believed the Policy protected a family business, and whether there were any internal discussions as to the Policy beneficiaries' self-proclaimed status as both relatives and business partners. Without some opportunity to develop the factual record, it would be premature to conclude that Ms. Stevens Jones has met her burden of proving that Ohio National was on inquiry notice as to the facts now underlying this claim.

Ms. Stevens Jones also argues the court must dismiss Ohio National's complaint because Ohio National's allegation that Ms. Stevens Jones procured the Policy or caused it be procured is not plausible. Under Maryland law, individuals must possess an insurable interest in the life of the insured only if they "procure or cause to be procured an insurance contract on the life or body of another individual." Md. Code Ann., Ins. § 12-201(a)(2). Therefore, if Ms. Stevens Jones did not play an affirmative role in procuring the Policy, she need not have an insurable interest in Mr. Jones's life.

Ohio National, however, has pled sufficient factual allegations to support its claim that Ms. Stevens Jones caused the Policy to be procured. Ohio National alleges that Ms. Stevens Jones always intended to have the Policy transferred to her, thereby increasing the likelihood that she convinced Mr. Jones to procure the Policy in the first place. In support of this claim, Ohio National notes that Ms. Stevens Jones carried out her plans a year and a half later by transferring ownership of the Policy to herself.[3] Ohio National also asserts that Ms. Stevens Jones was present when the Policy was procured and paid all the Policy premiums. In addition, Ohio National's amended complaint states that, according to Emma Jones, Mr. Jones was learning disabled and unable to read or write. Given these factual allegations, it is plausible that Ms. Stevens Jones played an affirmative role in procuring the Policy. Furthermore, Ms. Stevens Jones acknowledges that Ohio National has adequately alleged that she possessed no insurable interest in Mr. Jones's life at the time the Policy

---

[3] Ms. Stevens Jones argues that under *Fitzgerald v. Rawlings Implement Co.*, 79 A. 915, 916 (Md. 1911), the court may not consider this subsequent transfer of ownership as evidence that Ms. Stevens Jones caused the Policy to be procured. *Fitzgerald*, however, concerned the validity of the assignment of ownership itself. *See* 79 A. at 916. Thus the *Fitzgerald* court's finding that the assignment did not transform the life insurance policy into an unlawful wagering or gaming contract does not preclude this court from considering a transfer of ownership as evidence of the parties' intent at the time of procurement.

was procured. (*See* Reply at 7 n.3.)[4] Therefore, Ohio National's claim against Ms. Stevens Jones will survive this motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, Ms. Stevens Jones's motion to dismiss will be denied. A separate Order follows.


June  7, 2010                                                    /s/
Date                                                    Catherine C. Blake
                                                        United States District Judge

---

[4] It should be noted that Ms. Stevens Jones does not concede that she had no insurable interest in Mr. Jones's life when the Policy was procured. (*See id*.) Ms. Stevens Jones merely admits that the question of whether she possessed an insurable interest presents a factual dispute that may not be resolved at this stage in the litigation.