IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OHIO NATIONAL LIFE ASSURANCE : 
CORPORATION :
 :
 :
 v. : Civil No. CCB-09-2044
 :
 :
SYLVIA STEVENS JONES, EMMA JONES, :
ESTATE OF NATHANIEL JONES :
 :
 :

## MEMORANDUM

Ohio National Life Assurance Corporation ("Ohio National" or "plaintiff") brought this action for declaratory judgment and rescission to clarify its rights and responsibilities regarding a life insurance policy issued on the life of the late Nathaniel Jones. The two defendants in the suit, Sylvia Stevens Jones ("Ms. Stevens") and Emma Jones ("Ms. Jones"), both claim the right to benefits from the policy. Ms. Jones claims the right both for herself individually and, she alleges, as the personal representative of the Estate of Nathaniel Jones ("the Estate"). Ms. Stevens has filed a cross-claim against Ms. Jones for declaratory judgment and for tortious interference with contract, and Ms. Stevens has filed for summary judgment on those claims. Ohio National, after moving for summary judgment against both defendants, reached a settlement with Ms. Stevens, but not with Ms. Jones or the alleged Estate. The company now also moves to voluntarily dismiss all of its claims against all three defendants pursuant to Fed. R. Civ. P. 41(a)(2). Thus, now pending before this court are 1) Ohio National's motion for summary judgment against Ms. Jones and the Estate, 2) Ohio National's motion to voluntarily

1

dismiss all claims, and 3) Ms. Stevens's motion for summary judgment in her cross-claim against Ms. Jones and the Estate. Ms. Jones has filed briefs opposing all three of these motions. No hearing is necessary. *See* Local Rule 105.6. For the following reasons, the motions for summary judgment on the declaratory judgment actions will be granted, Ohio National's suit will be dismissed, and this case will be closed.

## BACKGROUND

On or about June 12, 2002, an Ohio National life insurance policy was procured for Nathaniel Jones with a face value amount of $800,000. The policy named the defendant Ms. Stevens as the sole primary beneficiary, and her husband, Ricky M. Stevens, as the sole contingent beneficiary. The facts surrounding the application for insurance are in dispute. Bobby Gross, the independent insurance agent who assisted in the application, claims that Mr. Jones was not present at the time the application was taken for the policy. (Aff. of Bobby Gross ¶ 20, ECF No. 63 Ex. 4.) Ms. Stevens's husband, on the other hand, claims that Mr. Jones *was* present. (Dep. of Mario Ricky Stevens 67–68, ECF No. 62 Ex. D.) Ohio National and Mr. Jones's sister, Ms. Emma Jones, have both questioned the authenticity of Mr. Jones's signature on the policy. (Ohio National Reply Br. 17 n.5, ECF No. 77; Dep. of Emma Jones 77, ECF No. 63 Ex. 9.) However, for the purpose of weighing the motions at hand, Ms. Jones has agreed that Mr. Jones executed the application and beneficiary form for the policy. (Opp'n of Def. Emma Jones to the Mots. for Summ. J. 2 n.1, ECF No. 92.)

According to Ms. Jones, her brother was illiterate and had a reduced mental capacity, (Emma Jones Interview 1, ECF No. 63 Ex. 9, at 21.), and he believed that the proceeds from the

2

insurance policy would go to her.  Ms. Jones contends that her brother advised her of the policy on August 24, 2002.  (Emma Jones Interrog. No. 8, ECF No. 63 Ex. 9.)  In that conversation, he told her of the amount of the policy, (*id*.), and "declared that the amount would be enough to take care of Ms. Jones and her kidneys after all the years that she cared for him."  (Emma Jones Interrog. No. 15, ECF No. 63 Ex. 9.)  Mr. Jones allegedly said something similar when his sister and her daughter visited him on his deathbed.  (Taylor Aff. ¶ 5–7, ECF No. 92 Ex. 1.)  There, he allegedly told Ms. Jones that the life insurance policy was through his job with Ms. Stevens, "and that he had signed the policy proceeds over to Emma Jones and his Estate."  (*Id*.)

There is no evidence that the designated beneficiary on Mr. Jones's policy had in fact been changed.  When Mr. Jones passed away on March 14, 2009, Ms. Stevens remained the named primary beneficiary, (ECF No. 62 Ex. 5.)[1], and she submitted a Death Claim Form to Ohio National.  The company, however, informed her that it would have to conduct an investigation into the policy because she had provided inconsistent dates of birth and Social Security numbers.  Ohio National's Senior Field Representative, Ed C. Cordie, Jr., met separately with Ms. Stevens and with Ms. Jones.  As a result of the investigation, the company concluded that the original transaction had violated the Maryland Insurance Code provision limiting the circumstances where one person can validly procure an insurance contract on the life of another.  Ohio National filed suit for declaratory judgment and rescission against Ms. Stevens, asking this court to void the policy and allow the company to return the policy premiums to Ms.

---

[1] On February 20, 2004, ownership of the policy was transferred from Mr. Jones to Ms. Stevens.  On March 22, 2004, Ms. Stevens completed a Designation of Beneficiary and Settlement Method Agreement form, changing the designation of beneficiaries such that she and Mr. Stevens were co-primary beneficiaries and their son Ricky Mario Stevens, Jr. was sole contingent beneficiary. On November 22, 2005, Ms. Stevens submitted another Designation of Beneficiary and Settlement Method Agreement form, eliminating Mr. Stevens as a policy beneficiary.
Thus, when Mr. Jones passed away, Ms. Stevens remained the sole primary beneficiary and her son, Ricky Mario Stevens, Jr., the sole contingent beneficiary.  There is no evidence that Ms. Jones or the Estate of Mr. Jones were ever listed as beneficiaries on the policy.

Stevens.  (Original Compl., ECF No. 1, at 7.)

Ohio National based its action on Maryland Insurance Code Section 12-201(a)(2), under which a person can only "procure or cause to be procured" an insurance contract on the life or body of another individual if the benefits of that contract are payable to the individual insured, her personal representative, or to "a person with an insurable interest in the individual insured at the time the insurance contract was made." Md. Code Ann., Ins. § 12-201(a)(2).  The company claimed Ms. Stevens had either procured Mr. Jones's insurance policy or caused the policy to be procured.  And, it argued, Mr. Cordie's investigation had revealed that Ms. Stevens was the policy's beneficiary but she had lacked "an insurable interest" in Mr. Jones at the time the contract was made.

Section 12-201 defines "insurable interest" as depending on either (1) love and affection of a person "closely related by blood or law," § 12-201(b)(2)(i), or (2) "a lawful and substantial economic interest in the continuation of the life, health, bodily safety of the individual," § 12-201(b)(3).  In applying for the policy, Ms. Stevens had originally claimed she was Mr. Jones's niece and the purpose of the policy was for "family protection."  (Gross Aff. ¶¶ 5, 21, ECF No. 63 Ex. 4.)   When informed that this relationship was not sufficiently close to meet the requirement, she had assured Ohio National that she, her husband, and Mr. Jones were partners in a roofing company.  (*Id*. at ¶ 24.)   Ohio National then approved the policy, presumably because these "business purposes" were sufficient to meet the requirements of §12-203(b)(3).

When Mr. Cordie met with Ms. Stevens as part of his investigation after Mr. Jones's death, Ohio National alleged, Ms. Stevens revealed that the purpose of the policy had never been business-related and that the purpose had always been personal.  (Ohio National Mot. for Summ.

4

J. Mem. 10–11, ECF No. 63 Attach. 2.)  Ms. Stevens has admitted that she is not related to Mr. Jones by blood, but alleges a very close personal relationship.  She called herself his niece because of an alleged relationship between Mr. Jones and Ms. Stevens's late aunt, and she alleges that Mr. Jones formally adopted her in 2006.  Ms. Stevens has also submitted into evidence two separate wills of Mr. Jones, one from 1999 and one from 2006, both identifying her as the sole devisee and executrix of Mr. Jones's estate.  (ECF No. 15 Exs. B & C.)  But because Ms. Stevens could not provide any evidence of any qualifying family relationship *at the time of the application*, the company argued, Ms. Stevens could not have had any insurable interest sufficient to meet the requirements of section 12-201.  (*Id.* at 21–24.)  Thus, Ohio National reasoned, the policy had been procured in violation of the insurance code and was *void ab initio*.

Ohio National filed its declaratory judgment action against Ms. Stevens on August 3, 2009.  Subsequently, an attorney for Ms. Emma Jones, the sister of the late Mr. Jones, contacted Ohio National about the suit.  Through her attorney, Ms. Jones claimed to be Mr. Jones's "sole heir," and she claimed Ms. Stevens "may have procured the [Ohio National] policy through some type of fraud," and therefore "the policy proceeds should be made payable to the Estate of Nathaniel Jones" instead of to Ms. Stevens. (Letter from Ms. Jones's attorney, ECF No. 63 Ex. 1.)  In response, Ohio National submitted an amended complaint expanding its declaratory judgment action to include Ms. Jones and the alleged "Estate of National Jones" ("Estate") as defendants as well.  (ECF No. 24.)

On January 6, 2010, Ms. Stevens filed a motion to dismiss Ohio National's action.  In the motion to dismiss, Ms. Stevens alleged that Ohio National had not shown evidence sufficient to make a plausible argument that Ms. Stevens had procured or caused to be procured the policy,

5

and thus the question of "insurable interest" was irrelevant. She further alleged that the case should be dismissed as time-barred because Ohio National had been put on inquiry notice of any lack of insurable interest when the policy had been procured in 2002. This court denied the motion, and Ms. Stevens then filed an answer to Ohio National's amended complaint and a cross-claim for declaratory judgment and tortious interference with contract against Ms. Jones and the Estate. Ms. Jones and the Estate had already filed an answer as well, though without any cross-claims.

After the case proceeded through discovery, Ms. Stevens filed a motion for summary judgment against Ohio National, Ms. Jones, and the Estate. Ohio National responded by filing its own motion for summary judgment against Ms. Stevens, Ms. Jones, and the Estate, contending the policy benefitting Ms. Stevens should be rescinded and either way Ms. Jones and the alleged Estate had no claim to any benefits. Ms. Jones fired her counsel on June 9, 2011. A settlement conference was scheduled for August 25, 2011, and settlement negotiations subsequently proceeded with the assistance of Chief Magistrate Judge Paul W. Grimm.

On October 18, 2011, Ohio National filed a motion for voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(2). (ECF No. 90.) The company announced that it had reached a settlement with Ms. Stevens, resolving all outstanding issues with her, and it added that Ms. Stevens consented to dismissal of the action. (*Id.* at ¶¶ 3–4.) Ms. Jones and the Estate, however, declined to grant consent to the dismissal, necessitating the motion before this court. Ms. Jones and the Estate, through new counsel, filed responses to Ohio National's motion for voluntary dismissal and to both motions for summary judgment. Ohio National and Ms. Stevens filed replies.

## ANALYSIS

### A. Motions for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

Under Maryland law, an insurance policy is a contract, and therefore is to be interpreted under the principles of contract law. *Anderson v. General Cas. Ins. Co.*, 935 A.2d 746, 752 (Md. 2007). A court therefore "look[s] first to the contract language employed by the parties to determine the scope and limitations of the insurance coverage." *Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 889 A.2d 387, 393 (Md. 2006) (citations omitted). In the life insurance contract at issue here, the relevant language for determining to whom the proceeds should be paid is the designation of beneficiaries. On November 22, 2005, the designation of policy beneficiaries was amended for the last time, and the language is unambiguous. At the time of Mr. Jones's death, the sole primary policy beneficiary was Ms. Stevens. There is no evidence that Emma Jones or the Estate of Nathaniel Jones were ever named as beneficiaries on the policy,[2] and indeed Ms. Jones does not so contend. Thus, barring some other successful theory of fraud or other statutory or common law violation, neither Ms. Jones nor the alleged Estate has a viable claim to the policy proceeds. Without some other viable theory, the alleged statements of Mr. Jones about the policy benefits are not relevant to determining the beneficiary; the plan documents alone provide the answer. *Cf. Boyd v. Metropolitan Life Ins. Co.*, 636 F.3d 138, 144 (4th Cir. 2011) ("[T]o the extent the plan participant wishes to direct benefits to a different party, she can simply change the designation on file. Given the easy availability . . . we see no reason to force plan administrators to scrutinize waivers extrinsic to plan documents.").

In her opposition to the motions for summary judgment, Ms. Jones proffers two alternative theories by which the policy proceeds should be directed to her or to the Estate. First,

---

[2] The policy language does note that "if no beneficiary survives" the insured, then the "death proceeds will be paid to the owner or the owner's estate." (Policy "General Provisions," ECF No. 63 Ex. 4A, at 10.) But Ms. Stevens, as the primary beneficiary, is alive. And, as she was made the owner of the policy in 2004 (Policy Ownership Change Form, ECF No. 62 Ex. 4), even if Ms. Stevens did not survive Mr. Jones, the death proceeds would go to *her* estate, not to Mr. Jones's.

she suggests undue influence on the part of Ms. Stevens.  Second, she contends language from the "insurable interest" section of Maryland's insurance code requires substitution of the Estate of Nathaniel Jones for Ms. Stevens as the lawful beneficiary of the policy.  Neither claim, however, can survive Ohio National and Ms. Stevens's motions for summary judgment.  As discussed below, Ms. Jones's success on these claims is predicated on either her alleged status as personal representative of her brother's estate or a hypothetical devise from his estate, but she has not provided the court with any evidence proving either of these essential elements of her claim to be true.  Because, as far as the record shows, Ms. Jones is not her brother's personal representative, a devisee of his estate, or a beneficiary of any alleged intestacy, Ohio National and Ms. Stevens are entitled to judgment as a matter of law.

   1. **Undue Influence**

The standard for a claim of undue influence in Maryland is well settled.  In a challenge to a testamentary transaction such as the designation of life insurance policy beneficiaries, the burden of production and proof is on the party seeking to set aside the transaction.  *Leimbach v. Allen*, 976 F.2d 912, 917 (4th Cir. 1992).  The Maryland Court of Appeals has elaborated a set of seven factors that are "characteristic of [the] presence" of undue influence, *Moore v. Smith*, 582 A.2d 1237, 1239 (Md. 1990), though all seven factors need not be present "for caveators to sustain their burden."  *Orwick v. Moldawer*, 822 A.2d 506, 510 (Md. App. 2003).[3]

This court need not consider the seven *Moore* factors in this case, however, because Ms.

---

[3] The seven *Moore* factors are: "1. The benefactor and beneficiary are involved in a relationship of confidence and trust; 2. The will contains a substantial benefit to the beneficiary; 3. The beneficiary caused or assisted in effecting execution of [sic] will; 4. There was opportunity to exert influence; 5. The will contains an unnatural disposition; 6. The bequests constitute a change from a former will; and 7. The testator was highly susceptible to the undue influence." *Moore v. Smith*, 582 A.2d 1237, 1239 (Md. 1990).

Jones has not articulated a viable theory for how a successful claim of undue influence would result in the outcome she requests. Ms. Jones's claim, presumably, is that her brother's designation of Ms. Stevens as the sole primary beneficiary on the original policy application should be invalidated and the proceeds turned over to his estate.[4] It is not clear, however, given the record before the court, how such an action would benefit Ms. Jones. Under Mr. Jones's 2006 will, Ms. Stevens is specified as the sole devisee of Mr. Jones's entire estate. (Jones 2006 Will, ECF No. 15 Ex. C.) If the 2006 will were successfully contested, Mr. Jones's 1999 will provides for the same. (Jones 1999 Will, ECF No. 15 Ex. B.) Even if both wills were successfully contested, and Mr. Jones's estate were divided by Maryland's intestacy law, the estate would be divided between Mr. Jones's children—not Ms. Jones. *See* Md. Code Ann., Est. & Trusts §§ 3-103 & 1-210.

While Ms. Jones has claimed to be the personal representative of Mr. Jones's estate, she has provided no evidence to support this contention. The only evidence in the record of the disposition of Mr. Jones's estate are Mr. Jones's 1999 and 2006 wills, both of which identify *Ms. Stevens* as the sole devisee and executrix of the estate. (ECF No. 15 Exs. B & C.) This court has not been advised of any state court probate proceedings to determine the validity of Mr. Jones's will or to appoint a personal representative, and Maryland state law limits a person from "qualify[ing] as or exercise[ing] the powers and duties of a personal representative unless he has

---

[4] The claim is not clearly articulated in Ms. Jones's briefing. Ms. Jones's original attorney first raised the argument in his pre-suit communications with Ohio National, where he requested the policy proceeds "be made payable to the Estate of Nathaniel Jones." (Letter from Ms. Jones's attorney, ECF No. 63 Ex. 1.) Later, in Ms. Jones's opposition to the motions for summary judgment, she claims "Stevens exercised fraud and/or undue influence upon Nathaniel Jones, who had trouble reading and writing, by causing him to execute a beneficiary designation form designating her as the beneficiary, when Nathaniel Jones was under the impression that he was designating his Estate and Ms. Jones as the beneficiary." (Jones Opp'n to Summ. J. Mots. 1–2, ECF No. 92.) Ms. Jones does not, however, specify the legal mechanism by which the court should redress the undue influence, nor does she provide any case law in support of her position.

been appointed administratively or judicially." Md. Code Ann., Estates & Trusts § 5-102(b).

Thus, unless and until Mr. Jones's 2006 will is invalidated by probate order, and Ms. Jones is designated the personal representative of the estate, Ms. Jones cannot articulate a successful undue influence claim that would direct the proceeds of the life insurance to her, either individually or as the personal representative of Mr. Jones's estate.[5]

### 2. Maryland Insurance Code § 12-201(d)

Ms. Jones's second alternative theory is similarly flawed. In addition to arguing undue influence, Ms. Jones adopts Ohio National's original argument that Ms. Stevens lacked an insurable interest in Mr. Jones, as required under Maryland law for policies procured by one person on the life of another. Ms. Jones directs the court's attention to Maryland Insurance Code Section §12-201(d), which creates a cause of action for an insured's executor or administrator to recover benefits paid improperly in violation of the insurable interest requirement. According to section 12-201(d),

> [i]f a beneficiary, assignee, or other payee under an insurance contract made in violation of [the insurable interest requirement] receives from the insurer benefits that accrue on the insured's death, disablement, or injury, the insured or the insured's executor or administrator may bring an action to recover benefits from the payee that receives them.

Md. Code Ann., Ins. § 12-201(d). Of course, Ms. Stevens settled for less than specified in the policy. But, it is not unreasonable to suggest that the proceeds of the settlement agreement between Ohio National and Ms. Stevens would qualify, in the language of the

---

[5] Under Maryland law, "[t]he duties and powers of a personal representative commence upon the issuance of his letters, but when done in good faith, his acts occurring prior to appointment have the same effect as those occurring after." Md. Code Ann., Estates & Trusts § 6-105(a); *see Chapman v. Kamara*, 739 A.2d 387, 395 (Md. 1999). This court cannot, however, assume Ms. Jones's action are in good faith—and allow this suit to proceed—in the absence of any evidence that Ms. Jones is in fact taking the appropriate steps to secure appointment in state court.

statute, as "benefits that accrue on the insured's death." Under this interpretation, the executor or administrator of Mr. Jones's estate could bring an action against Ms. Stevens (though not Ohio National) to recover the value of the settlement, once it has been paid.[6] However, as discussed above, Ms. Jones has provided no evidence to support her claim that she is the executor or administrator of the Estate of Nathaniel Jones. And, even if she *had* provided such evidence, she has not taken the opportunity this suit may have afforded her to bring a cross-claim against Ms. Stevens as provided for by the statute.

Certain facts required for a successful §12-201 claim remain in dispute between Ms. Jones and Ms. Stevens. Ms. Jones contends, and Ms. Stevens disputes, that Ms. Stevens procured or caused to be procured the life insurance policy. Ms. Stevens contends, and Ms. Jones disputes, that Ms. Stevens had an insurable interest in Mr. Jones at the time the policy was procured. But, because Ms. Jones has been unable to provide any evidence that she is the personal administrator of Mr. Jones's estate, or otherwise a devisee or beneficiary, neither of these two factual disputes are material to the outcome of this case. No genuine issue of *material* fact remains. Thus, as with her undue influence claim, Ms. Jones's attempt to rely on §12-201 must fail.

### 3. Tortious Interference with Contract

Ms. Stevens's cross-claim against Ms. Jones for tortious interference with contract will be dismissed *sua sponte* for failure to state a claim. In Maryland, the elements for tortious interference with contract are: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the

---

[6] Under the settlement, payment by Ohio National to Ms. Stevens is contingent on the dismissal of this case.


unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Kaser v. Fin. Protection Marketing, Inc.*, 831 A.2d 49, 53 (Md. 2003) (citation omitted). Ms. Stevens has not alleged any actual damage stemming from Ms. Jones's actions; therefore no claim for tortious interference may be sustained.

### B. Motion for Voluntary Dismissal

After a defendant has filed an answer or motion for summary judgment, a plaintiff may voluntarily dismiss an action only by court order. Fed. R. Civ. P. 41(a)(2). Whether to grant an order for voluntary dismissal lies within the district court's discretion. *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). Typically, a plaintiff's motion to voluntarily dismiss a claim will not be denied "absent plain legal prejudice to the defendant." *Ellett Bros., Inc. v. U.S. Fidelity & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001) (citation omitted).

Dismissal of Ohio National's suit for declaratory judgment will not unfairly prejudice either Ms. Stevens or Ms. Jones. Ms. Stevens has reached a settlement with Ohio National, and this court will grant summary judgment for her in her claim for declaratory judgment against Ms. Jones. Ms. Stevens thus has no interest in further litigation. While Ms. Jones has opposed the motion for voluntary dismissal, she has done so in order to continue to litigate her defenses to the claims for declaratory judgment against her. Because this court here grants summary judgment on both of those declaratory judgment claims, Ms. Jones also has nothing left to litigate and thus will suffer no legal prejudice from the dismissal of this case. As neither defendant will be unfairly prejudiced by dismissal of Ohio National's action against Ms. Stevens, the action will be

dismissed.

## **CONCLUSION**

In sum, Ms. Jones's failure to substantiate her claim to be the personal representative of the Estate of Nathaniel Jones is a fatal flaw in her defense to the claims for declaratory judgment. Summary judgment must therefore be granted on Ohio National's action for declaratory judgment against Ms. Jones and on Ms. Stevens's cross-claim for declaratory judgment against Ms. Jones. Ms. Stevens's claim for tortious interference with contract will be dismissed, and Ohio National's action against Ms. Stevens will also be dismissed.

A separate Order follows.


January 4, 2012                                           /s/
Date                                                      Catherine C. Blake
                                                          United States District Judge